No. 10-2174

IN THE

# United States Court of Appeals
### FOR THE SEVENTH CIRCUIT

FLORENCE CROWE,

*Petitioner,*

v.

BENEFITS REVIEW BOARD, *et al.*,

*Respondents.*

ON PETITION FOR REVIEW OF A DECISION
AND ORDER OF THE BENEFITS REVIEW BOARD,
UNITED STATES DEPARTMENT OF LABOR

**BRIEF OF ZEIGLER COAL COMPANY AND THE TRAVELERS COMPANIES**

Mark E. Solomons
Laura Metcoff Klaus
GREENBERG TRAURIG LLP
2101 L Street, N.W.
Washington, D.C. 20037
(202) 533-2361

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>10-2174_____</u>

Short Caption: <u>Crowe v. Benefits Review Board, et al._____</u>

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement stating the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is no applicable if this form is used.**

**[ ]   PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED**
**AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing the item #3):

<u>Zeigler Coal Company and The Travelers Companies, as purported surety_____</u>

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>Greenberg Traurig, LLP, Arter & Hadden, White & Risse LLP, Freirich/Mager/Green/Ryan, Law Offices of Wayne Reynolds, P.C. appeared in the proceedings before the administrative agency, Greenberg Traurig, LLP and Weber & Thies, P.C. appeared in proceedings before the district court, and Greenberg Traurig is appearing before this Court</u>

(3) If the party or amicus is a corporation:

i) Identify all its parent corporations, if any; and
<u>N/A_____</u>

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:
<u>N/A_____</u>

_____ _____

Attorney's Signature: <u>_____</u>Date:<u>___November 4, 2010_____</u>
Attorney's Printed Name:<u>  Mark E. Solomons_____</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  Yes [ X ]    No. [   ]

Address: <u>  Greenberg Traurig LLP, 2101 L Street, N.W. Suite 1000, Washington, D.C. 20037_____</u>
Phone Number: <u> 202-533-2361_____</u>Fax Number: <u> 202-261-0129_____</u>
E-Mail Address:<u>  Solomonsm@gtlaw.com_____        _____</u>

**rev.01/08 AK**

## TABLE OF CONTENTS

Page

I.    COUNTERSTATEMENT OF JURISDICTION ................................................... 1

II.   COUNTERSTATEMENT OF THE ISSUES PRESENTED ............................... 1

III.  COUNTERSTATEMENT OF THE CASE ......................................................... 2

IV.   COUNTERSTATEMENT OF FACTS ............................................... 7

     A.    Personal and Employment History ................................................. 7

     B.    Medical Evidence ................................................................... 8

V.    SUMMARY OF ARGUMENT ............................................................ 10

VI    ARGUMENT ................................................................................ 12

     A.    THERE IS NO LEGAL IMPEDIMENT TO A SURETY
         INTERVENING ON BEHALF OF A BANKRUPT PRINCIPAL ............ 12

     B.    THE ALJ DID NOT ABUSE HIS DISCRETION IN HOLDING
         THAT MODIFICATION OF CROWE'S CLAIM SATISFIED
         THE "JUSTICE UNDER THE ACT" STANDARD .............................. 18

     C.    THE COURT LACKS JURISDICTION TO REINSTATE
         THE ALJ'S PRIOR, VACATED DECISION IN THIS CASE ................ 23

VII.  CONCLUSION ................................................................................ 27

CERTIFICATIONS OF COUNSEL

## TABLE OF AUTHORITIES

Page

Cases:

Bennett v. Spear,
    520 U.S. 154 (1997) ............................................................................................ 12

Bartley v. L & M Coal Co.,
    901 F.2d 1311 (6th Cir. 1990)........................................................................ 23,24

BondPro Corp. v. Siemens Power Generation, Inc.,
    463 F.3d 702 (7th Cir. 2006) ........................................................................... 13

Bracher v. Director, OWCP,
    14 F.3d 1157 (7th Cir. 1994) ............................................................................ 21

Canadian Ace Brewing Co. v. Joseph Schlitz Brewing Co.,
    629 F.2d 1183 (7th Cir. 1980)........................................................................... 13

Celotex Corp. v. Edwards,
    514 U.S. 300 (1995) ...................................................................................... 16,17

Creech v. Benefits Rev. Bd.
    841 F.3d 706 (6th Cir. 1988) ............................................................................ 26

Crowe v. Zeigler Coal Co.,
    No. 02-2124 (C.D. Ill. Aug. 19, 2004)................................................................. 4

Director, OWCP v. Rowe,
    710 F.2d 251 (6th Cir. 1983) ............................................................................ 24

Gruntz v. County of Los Angeles,
    202 F.3d 1074 (9th Cir. 2000)........................................................................... 16

Hawxhurst v. Pettibone Corp.,
    40 F.3d 175 (7th Cir. 1994) .............................................................................. 17

Indian Mountain Coal Co. v. Director, OWCP,
    No. 96-2262 (4th Cir. June 11, 1998) ............................................................... 21

In Re Airadigm Commc'ns,
    547 F.3d 763 (7th Cir. 2008) ............................................................................ 17

In Re Horizon Natural Resources Co.,
    No. 02-14261 (Brkr. E.D. Ky. 2004) ..................................................... 5

In Re Shondel,
    950 F.2d 1301 (7th Cir. 1991) ............................................................ 17

Lane v. Union Carbide Corp.,
    105 F.3d 166 (4th Cir. 1997) .............................................................. 18,24

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992) .......................................................................... 12

Mchan v. Rutz,
    288 F.3d 1172 (9th Cir. 2002) ............................................................ 17

Metropolitan Stevedore Co. v. Rambo,
    515 U.S. 291 (1995) .......................................................................... 22

Migliorini v. Director, OWCP,
    898 F.2d 1292 (7th Cir. 1990) ............................................................ 27

NAACP v. New York,
    413 U.S. 345 (1973) .......................................................................... 16

O'Keeffe v. Aerojet-General Shipyds, Inc.,
    404 U.S. 254 (1971) ........................................................................ 4,19,23

Old Ben Coal Co. v. Director, OWCP [Hilliard],
    292 F.3d 533 (7th Cir. 2002) ..........................................................18,19,20,22

Old Ben Coal Co. v. OWCP [Melvin],
    476 F.3d 418 (7th Cir. 2007) ....................................... 6,7,8,13,14,15,16,17

Peabody Coal Co. v. Director, OWCP [Ayers],
    40 F.3d 906 (7th Cir. 1994) ............................................................... 22

Reich v. ABC/York-Estes Corp.,
    64 F.3d 316 (7th Cir. 1995) ............................................................... 16

Sahara Coal Co. v. Fitts,
    39 F.3d 781 (7th Cir. 1994) ............................................................... 24

Sahara Coal Co. v. Director, OWCP [McNew],
    946 F.2d 554 (7th Cir 1991) .............................................................. 3,20

Shelton v. Director, OWCP,
     899 F.2d 690 (7th Cir. 1990) ................................................................ 26

Sierra Club v. Espy,
     18 F.3d 1202 (5th Cir. 1994) ............................................................... 16

VanDyke v. Missouri Mining, Inc.,
     78 F.3d 362 (8th Cir. 1996) ................................................................. 24

Walker v. Birmingham,
     388 U.S. 307 (1967) ............................................................................. 17

Zeigler Coal Co. v. Director, OWCP [Griskell],
     490 F.3d 609 (7th Cir. 2007) ........................................................ 7,12,14,15,16

Zimmerman v. Director, OWCP,
     871 F.2d 564 (6th Cir. 1989) ............................................................... 27


U.S. Constitution:

U.S. Const., Art. III ................................................................................... 12


Statutes and Regulations:

28 U.S.C. § 1352 ......................................................................................... 14

Black Lung Benefits Act, as amended, 30 U.S.C. §§ 901-945 ........................... 1
     Section 502(f)(1)(A), 30 U.S.C. § 902(f)(1)(A) ................................................ 27
     Section 422(a), 30 U.S.C. § 932(a).............................................................1,4,22,25
     Section 422(g), 30 U.S.C. § 932(g) ....................................................................... 8
     Section 424, 30 U.S.C. § 934 ................................................................................. 4

Longshore Act, as amended, 33 U.S.C. §§ 901-952
     Section 21(b), 33 U.S.C. § 921(b) ........................................................................ 1
     Section 21(c), 33 U.S.C. § 921(c) ................................................................... 23,25
     Section 21(c)(3), 33 U.S.C. § 921(c)(3) ............................................................... 1
     Section 21(d), 33 U.S.C. § 921(d) ...................................................................... 22
     Section 22, 33 U.S.C. § 922 ........................................................................... 4,21,22

Black Lung Benefits Act of 1972, 86 Stat. 150 ................................................... 1

Black Lung Benefits Reform Act of 1977, 92 Stat. 95 ........................................ 1

Black Lung Benefits Revenue Act of 1977, 92 Stat. 11 ....................................... 1

Black Lung Benefits Revenue Act of 1981, and the Black Lung Benefits
    Amendments of 1981, 95 Stat. 1635 ..................................... 1

Consolidated Omnibus Budget Reconciliation Act of 1985,
    Pub. L. No. 99-272, 100 Stat. 312, 313 (1986)................................... 1

Omnibus Reconciliation Act of 1987,
    Pub. L. No. 100-203, 101 Stat. 1330 (1987) ......................................... 1

Patient Protection and Affordable Care Act,
    Pub. L. No. 111-148, § 1556 (March 23, 2010)............................................... 1

Federal Rules of Appellate Procedure
    Rule 26.1 ................................................................. i

Rules of the United States Court of Appeals for the Seventh Circuit
    Circuit Rule 26.1 .................................................. ii

Black Lung Program Regulations
    20 C.F.R. § 718.202(a)(1) ........................................ 25
    20 C.F.R. § 718.202(a)(2) ........................................ 25
    20 C.F.R. § 718.204(b) ............................................ 26
    20 C.F.R. § 725.309 ............................................... 2,3
    20 C.F.R. § 725.310 ............................................... 21
    20 C.F.R. § 725.360(d) ........................................... 13
    20 C.F.R. § 725.544 ............................................... 21
    20 C.F.R. § 725.547 ............................................... 21

## I.     COUNTERSTATEMENT OF JURISDICTION

This is a claimant's appeal from the denial of benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901-945.[1]  The claimant, Florence Crowe, has alleged that this Court has subject matter and appellate jurisdiction to consider this appeal.  That statement is correct, but not complete.  The administrative law judge ("ALJ") issued the decision and order that is the subject of this appeal on January 30, 2009.  App. 9.  The claimant filed a timely notice of appeal from that decision, giving the United States Department of Labor's Benefits Review Board jurisdiction under 33 U.S.C. § 921(b), incorporated by reference into 30 U.S.C. § 932(a).  The Benefits Review Board issued a decision and order affirming the denial of benefits on March 18, 2010.  App. 1.  That decision was a final order within the meaning of 33 U.S.C. § 921(c)(3).  On May 12, 2010, this Court docketed claimant's petition for review of that decision.  The appeal is timely.  Id.  The miner, Harold Crowe, last worked as a miner in the State of Illinois.  These facts establish this Court's subject matter and appellate jurisdiction.

## II.    COUNTERSTATEMENT OF THE ISSUES PRESENTED

A.    Did the bankruptcy of Zeigler Coal Company extinguish the rights of a surety with potential liability for Crowe's claim?

B.    Did the ALJ abuse his discretion in considering the merits of Zeigler's petition for modification?

---

[1]     Part C of Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended by the Black Lung Benefits Act of 1972, 86 Stat. 150, and as further amended by the Black Lung Benefits Reform Act of 1977, 92 Stat. 95, the Black Lung Benefits Revenue Act of 1977, 92 Stat. 11, the Black Lung Benefits Revenue Act of 1981, and the Black Lung Benefits Amendments of 1981, 95 Stat. 1635, Consolidated Omnibus Budget Reconciliation Act of 1985, Pub. L. No. 99-272, 100 Stat. 312, 313 (1986), and Omnibus Reconciliation Act of 1987, Pub. L. No. 100-203, 101 Stat. 1330 (1987) (referred to as the "Act" or "BLBA"), and Patient Protection and Affordable Care Act, P. L. 111-148, § 1556 (March 23, 2010).

C.    Is the Administrative Law Judge's decision to deny benefits supported by substantial evidence and in accordance with law?

## III.    COUNTERSTATEMENT OF THE CASE

This case has a very long procedural history. It began in January 1981, when Harold Crowe first filed for benefits six months after he had retired from work. Dx. 26. Crowe was thirty-six years old and had worked as a miner for five years. Dx, 2. Crowe ignored the Department of Labor's ("DOL") efforts to schedule a pulmonary evaluation for him, and DOL denied the claim as abandoned. Crowe did not return to work after his first claim was denied, although he continued to smoke cigarettes, a longstanding habit. Almost ten years later, on August 15, 1990, he filed a new application. DOL's rules provide that when a claimant files such a duplicate or successive claim, the proof must establish a material change in condition, i.e., at least one of the elements of entitlement that precluded an award in the prior claim. 20 C.F.R. § 725.309. This time, Crowe submitted evidence and attended the examination that DOL provided. After DOL informed him that the proof did not establish his entitlement to benefits or a material change in his condition, Crowe requested a hearing and the claim proceeded to the Office of Administrative Law Judges for trial. The parties later agreed to a decision on the record.

On February 11, 1994, an administrative law judge ("ALJ") denied the claim. Supplemental Appendix ("Supp.") 55. He concluded that the weight of the evidence did not establish that Crowe had black lung disease. Nor did the proof establish that Crowe was totally disabled by any respiratory or pulmonary impairment, let alone one that arose out of coal mine employment. The Benefits Review Board vacated that decision because the ALJ overlooked one of the opinions submitted by Crowe. Dx. 28-431. On remand, the ALJ initially concluded that Crowe was entitled to benefits, but on reconsideration, reversed

course, applying this Court's decision in <u>Sahara Coal Co. v. Director, OWCP</u> [<u>McNew</u>], 946 F.2d 554 (7th Cir 1991). Dx. 28-398. There, this Court held that to establish the material change in condition required under section 725.309, the proof had to show "either that the miner did not have black lung disease at the time of the first application but has since contracted it and become totally disabled by it, or that his disease has progressed to the point of becoming totally disabling although it was not at the time of the first application." <u>McNew</u>, 946 F.2d at 556. The Court in <u>McNew</u> recognized that proof of such a change could not be established simply by producing new evidence of the claimant's entitlement:

> It is not enough that the new application is supported by new evidence of disease or disability, because such evidence might show merely that the original denial was wrong, and would thereby constitute an impermissible collateral attack on that denial. Suppose for example that in his original application the miner had presented no evidence at all, and been turned down. He reapplies after the first denial has become final and this time presents an abundance of evidence. If the evidence shows not that his condition has worsened since the first application but merely that he should not have been turned down, he has failed to demonstrate a material change in his condition; he is merely attempting to relitigate his original claim.

<u>McNew</u>, 946 F.2d at 556. Relying on <u>McNew</u>, the ALJ found that the evidence established that if Crowe were disabled by pneumoconiosis, he was disabled all along which could not establish a material change in Crowe's condition as a matter of law. The Board affirmed the ALJ's decision and denied reconsideration. Dx. 28-381, 28-361.

Crowe filed a timely appeal to this Court. On August 21, 2000, this Court decided that the Board's decision could not be affirmed based on its belief that this case was different from <u>McNew</u>. Dx. 28-363. In its view, McNew's first claim was denied on the merits, whereas Crowe's claim was denied on procedural grounds. McNew was represented by counsel, whereas Crowe was not. And,

according to the Court, Crowe's failure to pursue his original claim was the product of alleged misinformation from someone at the Social Security office coupled with Crowe's illiteracy.  The Court therefore decided, based on "the specific and unique facts of this case" that the standard adopted in <u>McNew</u> did not apply to Crowe's case.  It ordered remand for the ALJ to do a better job explaining the reasons and bases for his findings.  On March 29, 2001, the ALJ issued a decision and order awarding benefits and reaffirmed that decision on June 28, 2001.  Dx. 28-732.  The ALJ interpreted this Court's decision as a finding that the claim was not a duplicate claim at all, so he awarded benefits as of July 1, 1981.[2]  Supp. 39.  Crowe then sought augmented benefits for two additional dependents.  Dx. 28-191.

Under 33 U.S.C. § 922, <u>incorporated by reference into</u> 30 U.S.C. § 932(a), any party (claimant, employer or the district director) may petition for modification of a decision based on a change in condition or a mistake of fact, provided the request is filed within one year of the last decision denying a claim or the last payment of benefits on an awarded claim.  No other statutory condition burdens the right to seek modification and the Supreme Court has held that the right to readjudicate within the statutory limits is extremely broad and inclusive.  <u>See</u> <u>O'Keeffe v. Aerojet-Gen. Shipyds, Inc.</u>, 404 U.S. 254 (1971).

On September 20, 2001, Zeigler Coal Company filed a petition for modification and submitted evidence establishing that Crowe did not have

---

[2]     On May 20, 2002, while an appeal to the Benefits Review Board was pending, Crowe filed suit in the United States District Court for the Central District of Illinois, Urbana Division, seeking judicial enforcement of the non-final award.  Such action is not authorized and Crowe's benefits were being paid at that time by the Black Lung Disability Trust Fund in accordance with 30 U.S.C. § 934.  Horizon Natural Resources Inc,, the parent of Zeigler Coal Company, had filed for reorganization in bankruptcy.  Judge McCuskey, following notice, stayed the proceeding and later dismissed it without prejudice pursuant to a tolling agreement between Zeigler and Crowe.  <u>Crowe v. Zeigler Coal Co.</u>, No. 02-2124 (dismissed August 19, 2004).

pneumoconiosis, but suffered from the effects of a significant cigarette smoking habit and psychiatric problems.  Dx. 28-166, Dx. 28-141.  After administrative processing, the district director forwarded the case to the Office of Administrative Law Judges.  On July 31, 2003, the ALJ issued a decision and order declining to modify the prior decision.  App. 50.  On August 24, 2004, the Benefits Review Board vacated that decision.  App. 42.  On remand, in a decision and order issued July 1, 2005, the ALJ granted modification and denied benefits.  App. 22.  The ALJ found that the evidence established a mistake of fact in the prior adjudication of the case.  The reasoned and documented medical opinions established that Crowe did not have pneumoconiosis and the record established that Crowe was not functionally disabled from a respiratory or pulmonary standpoint regardless of the source of any lung disease.  App. 37,  App. 40.

In the meantime, on September 30, 2004, Zeigler was liquidated in bankruptcy.  The Joint Liquidation and Reorganization Plan approved by the United States Bankruptcy Court directed that any claims pending as of that date proceed to final adjudication with the applicable debtor as a party.  In re Horizon Resources Co., slip op. at 44-45, No. 02-14261 (Bkr. E.D. Ky. 2004) (unpublished), available at www.kyeb.uscourts.gov.   In his July 1, 2005 decision, the ALJ concluded that the request for modification was not abated by Zeigler's bankruptcy.  App, 25.  Later, the Director informed the Benefits Review Board that it had concluded that Zeigler had a bond that was in effect at the time of Crowe's last coal mine employment and therefore Zeigler was capable of assuming liability notwithstanding its bankruptcy.  The Director did not seek to add any additional parties to the claim following Zeigler's bankruptcy; it proceeded only against Zeigler pursuant to the Bankruptcy Court's order.

Crowe appealed from the ALJ's decision denying benefits to the Benefits Review Board.  On July 27, 2006, although the Board affirmed the ALJ's finding

that the evidence did not establish Crowe's entitlement on the merits, and rejected Crowe's effort to dismiss Zeigler's petition for modification based on its bankruptcy, the Board ordered that the case return to the ALJ for a determination of whether reopening the claim "would render justice under the Act." App. 20. The Board declined to reconsider this ruling. Supp. 1. By then, this Court had decided that Horizon and its related entities (including Zeigler) that were liquidated in the bankruptcy proceedings did not have standing to defend black lung claims. According to the Court, the potentially liable sureties or principals had to intervene in any pending proceedings. Old Ben Coal Co. v. OWCP [Melvin], 476 F.3d 418 (7th Cir. 2007). Therefore, when the case returned to the ALJ, notwithstanding its disagreement with the decision in Melvin and its identification as a surety in the case, Travelers filed a protective motion for conditional intervention.

On January 30, 2009, the ALJ issued a decision on remand, denying Travelers' motion for leave to intervene, but finding that the case could proceed against Zeigler. App. 13. The ALJ explained:

> It [Zeigler] did not seek modification until it apparently decided that it had little chance of prevailing on the existing limited medical evidence and that its efforts to convince me to reopen the record absent modification would never be granted. When it decided to pursue modification, it did not take this task lightly. It diligently developed substantial medical evidence from highly qualified pulmonary specialists to convince a trier-of-fact that mistakes of fact were indeed made in deciding the case in favor on [sic] the claimant.

App. 14. In addition, the ALJ declined to find that Zeigler's failure to pay benefits immediately to Crowe provided a reason to deny its petition for modification. The judge recognized that Crowe was not adversely affected by Zeigler's actions; he was paid benefits by the Black Lung Disability Trust Fund.[3]

_____

[3] Because black lung claims are often so slowly adjudicated, employers often do not pay interim benefits pending appeals. The statute expressly

App. 13-14.   Finally, the ALJ concluded that in this case, the "statutory preference for accuracy of benefits determination" controlled the inquiry especially where, as here, the "newly developed medical evidence unquestionably demonstrates that I made mistake of fact in finding the evidence was sufficient to prove the miner has pneumoconiosis and is totally disabled by the disease."  App. 14.

Crowe appealed yet again to the Benefits Review Board and Travelers again filed a conditional motion to intervene which the Board granted on October 21, 2009.  App. 7.  On March 19, 2010, the Board affirmed the ALJ's decision. App. 1.  Crowe renewed his objection to Travelers' participation in the case, again requesting the dismissal of the petition for modification based on Melvin and the theory that there was no party with standing to seek modification.  The Board found the arguments lacked merit.  The Board held that this case was more like Zeigler Coal Co. v. Director, OWCP [Griskell], 490 F.3d 609 (7th Cir. 2007), where the Seventh Circuit permitted a surety to intervene after its decision in Melvin.  App. 4-5.  The Board also found no merit in Crowe's argument that the ALJ erred in finding that modification rendered justice under the Act where, as here, the ALJ identified and considered the relevant criteria and explained the reasons and bases for his decision.  App. 5-6.

Crowe's appeal to this Court followed.

## IV.    COUNTERSTATEMENT OF FACTS

### A.    Personal and Employment History.

Crowe was worked as a miner for five years, beginning in 1975, and ending in June 1980, when he was thirty-six years old.  Crowe last worked as a

---

accommodates this conduct by allowing the Black Lung Disability Trust Fund to pay interim benefits and then, if the benefit award becomes final, the Fund may recover its payments with interest.

shuttle car operator for Zeigler.  That job involved mostly sitting and standing, but three times during the day, Crowe had to lift between twenty-five and forty pounds.  Dx. 4.  Crowe then filed a claim for workers' compensation benefits against Zeigler, claiming disability due to asthma.  Zeigler paid Crowe $28,000 as part of a settlement agreement on that claim.  Ex. 1.[4]

Before his brief stint as a coal miner and continuing for years after he left the mines, Crowe smoked cigarettes.  Although at one point, he claimed to have quit smoking cigarettes in 1978, Crowe continued to smoke cigarettes in March 1991, and his family reported that he smoked up to three packages of cigarettes daily.  Dx. 28-603, 28-616.  He also drank alcohol in large amounts for extended periods.  In June 1989, a doctor noted that Crowe had been drinking one-half to one case of alcohol daily for a week although Crowe claimed this account was exaggerated.  See Dx. 28-609, 28-612.  Crowe died in August 2009, at age sixty-five.

B.    Medical Evidence.

Crowe submitted no evidence when he first filed for benefits in 1981.  In his second claim, he submitted a report from Dr. Curtis Krock, a board-certified specialist in internal medicine and pulmonary disease, who examined Crowe in 1979 and 1980, and determined that Crowe had disabling bronchitis and asthma or hyperactivity of the lungs even though his testing did not demonstrate that Crowe had sufficient variability and response to therapy to support that diagnosis.  Dx. 28-656 to 28-657.  Dr. Krock saw Crowe several times after August 1980, but his conclusion remained unchanged.  Dx. 28-661, 28-666.  He did not believe that Crowe could perform work that would involve exposure to dust or fumes, or very heavy manual labor.  Id.  He acknowledged,

---

[4]    Those benefits offset, dollar for dollar, any award of benefits that might have been due on the federal claim.  30 U.S.C. § 932(g).

however, that Crowe's pulmonary function studies did not demonstrate any respiratory disability.  Dx. 28-672.  Dr. Krock rendered no opinion as to the source of Crowe's respiratory disease.  He did not identify the length of Crowe's coal mine employment or consider the fact or extent of Crowe's smoking habit.

Dr. Glen Baker examined Crowe on October 12, 1990.  Dx. 8.  Crowe told the doctor he was currently smoking a pipe, but had smoked cigarettes in the past, less than one package daily.  His physical examination was normal except for wheezing.  Pulmonary function studies and arterial blood gas tests were within normal limits.  And although the doctor read an x-ray as positive for early stage, simple pneumoconiosis (Dx. 12), he found only a mild impairment. Better qualified readers found the x-ray was completely negative for pneumoconiosis.  Dx. 10, Dx. 11.

Drs. Joseph Renn, Greg Fino, A. Dahhan, and Lawrence Repsher reviewed the medical evidence in Crowe's case, including office records, hospital records, and the reports of Drs. Krock and Baker.  They noted that Crowe had sought treatment for various respiratory infections, cough and sore throats and had been hospitalized several times between 1989 and 1991, for respiratory failure diagnosed as Legionella pneumonia, streptoccal pneumonia.  Crowe's medical record included diagnoses of ethanolism, depression, anxiety, arterioscerotic heart disease, anemia, hypercholesterolemia, and treatment for a head contusion, back strain, and a broken arm and foot.  Other than when he had respiratory infections, Crowe's physical examinations between 1976 and 1992, were normal.  None of the valid laboratory tests disclosed an airway obstruction or any serious pulmonary disease  Dr. Renn concluded that the only respiratory disease in Crowe's case was possible tobacco smoke-induced chronic bronchitis.  Dx. 28-1.  Dr. Repsher agreed.  He reported "Chronic bronchitis by history, overwhelmingly most likely due to his long an heavy

cigarette smoking habit." Dx. 28-173. Drs. Renn, Repsher and Fino found no objective evidence of asthma, whether or not it was work-related, and no support for a diagnosis of coal workers' pneumoconiosis or any other coal mine-dust induced disease. Dr. Dahhan noted only a history of chronic bronchitis and asthma based on Dr. Kolick's reports. He diagnosed a psychological abnormality with episodes of hyperventilation, but did not find this condition to related to or aggravated by the inhalation of coal mine dust. Dx 28-86. Dr. Repsher similarly diagnosed somatization syndrome, manifested by intermittent vocal cord dysfunction syndrome, psychogenic cough, as well as other psychosomatic symptoms. Dx. 28-173. Nor did the doctors find that Crowe was disabled for work from a respiratory standpoint; his respiratory system was functioning normally. Dx 28-13 to 28-14 (Dr. Renn); Dx. 28-58 (Dr. Fino); Dx. 28-87 (Dr. Dahhan); Dx. 28-174 and Dx. 28-142 (Dr. Repsher). Dr. Renn is a board-certified specialist in internal medicine and pulmonary disease and, at the time of his report, a clinical associate professor of medicine at West Virginia University Medical Center. Dx. 28-22 to 28-33. Dr. Fino is similarly certified and was an Assistant Clinical Professor of Medicine at the University of Pittsburgh. Dx. 28-61 to 67. Dr. Dahhan also is board-certified in internal medicine and pulmonary disease. Dx. 28-90 to 28-94. Dr. Repsher is board-certified in internal medicine and pulmonary disease, was an Associate Clinical Professor of Medicine in the Division of Pulmonary Sciences a the University of Colorado, and the author of many journal articles on respiratory disease. Dx. 28-181 to 28-188.

## V.  SUMMARY OF ARGUMENT

Mrs. Crowe's pursuit of this appeal is difficult to understand. While he was alive, Harold Crowe received monthly benefits that he did not deserve. Neither his estate nor Mrs. Crowe will have to repay those benefits. The Trust

Fund does not attempt to recover overpaid benefits. Mrs. Crowe nevertheless complains that notwithstanding its dissolution in bankruptcy, Zeigler rather than the Department of Labor should have paid those benefits as well as almost $200,000 in back benefits and interest. And, Mrs. Crowe complains that no party has a right to defend the claim. She is not aggrieved by Zeigler's decision not to pay those benefits. She does not represent the Black Lung Disability Trust Fund that provided interim benefits to Mr. Crowe during the pendency of these proceedings. Her lawyer believes that this is not the proper way to run a program, but he does not provide this Court with the authority to consider her argument. A black lung claimant has no standing to challenge the adminitrative approach taken by DOL in claims processing unless the claimant's rights are prejudiced. That is not the case here. No one violated the law and it seems that Mrs. Crowe or her lawyer wants to punish Travelers for no valid reason.

Mrs. Crowe additionally asks this Court to exceed its role on review. Notwithstanding the final order of the United States Bankruptcy Court for the Eastern District of Kentucky that pending cases involving Horizon Natural Resources and its affiliated companies (including Zeigler) were to proceed with the debtor as the employer, Mrs. Crowe asks this Court to hold that when Zeigler was discharged in bankruptcy, all pending claims against Zeigler had to be dismissed. It is well established, however, that no court has authority to alter an order of the bankruptcy court in a collateral proceeding. Nor would it be appropriate to do so here.

Finally, Mrs. Crowe disagrees with the decision to grant modification and deny Crowe's claim. She prefers the earlier opinion of the ALJ who awarded benefits on Crowe's claim and asks the Court to turn the clock back and reinstate that decision. This argument ignores the scope of this Court's review

as well. The Court reviews final orders or decisions of administrative agencies. Mrs. Crowe's petition for review acknowledges the point, seeking review only of the March 18, 2010 decision and order of the Benefits Review Board. Her argument overlooks that petitions for modification are exceptions to the normal rules of finality; the decision Mrs. Crowe seeks to reinstate was replaced by a new decision and order based on new evidence that showed that Crowe was not entitled to federal black lung benefits because he did not have black lung disease and he was not disabled for work on account of any respiratory disease or impairment regardless of the source. If that decision is supported by substantial evidence, and Mrs. Crowe does not contend otherwise, it must be affirmed even if this Court would have found differently were it the trier of fact.

## VI.  ARGUMENT

### A.    THERE IS NO LEGAL IMPEDIMENT TO A SURETY INTERVENING ON BEHALF OF A BANKRUPT PRINCIPAL

Mrs. Crowe insists that this Court's decision in <u>Melvin</u>, 476 F.3d 418, deprived the Benefits Review Board and this Court of Article III jurisdiction to consider Zeigler's petition for modification. Mrs. Crowe's belief that the proceedings should have abated with Zeigler's bankruptcy overlooks both the bankruptcy court's decision as well as this Court's decision in <u>Griskell</u>, 490 F.3d 609. Crowe argues that Travelers as surety has no Article III standing to pursue the petition for modification filed by Zeigler following Zeigler's bankruptcy because Zeigler could not seek modification because it was in liquidation. The argument makes no sense. Article III standing requires only a true case or controversy involving an injury in fact that is fairly traceable to the action of the other party, and that the injury can be redressed by a favorable decision. <u>Bennett v. Spear</u>, 520 U.S. 154, 162 (1997); <u>Lujan v. Defenders of Wildlife</u>, 504

U.S. 555, 560-61 (1992).  If the surety agreement between Zeigler and Travelers imposes potential liability on Travelers for Crowe's claim and Travelers seeks party status to defend the liability, there is no valid argument and no authority is cited that Article III standing or any other principle of standing is implicated. The Department of Labor's regulation allows any interested person to become a party to a claim.  20 C.F.R. § 725.360(d).  Zeigler was an interested party before this Court's decision in <u>Melvin</u> because the Horizon bankruptcy court held the claim would go forward against the debtor.  After <u>Melvin</u>, Travelers, as surety for Zeigler was required to become a party and did so.  There is no standing issue in this case under Article III or any other principle of law.

Crowe asks this Court to further extend <u>Melvin</u> and to again consider the effects of a decision of the Bankruptcy Court of United States District Court for the Eastern District of Kentucky on the vitality of a pending claim for federal black lung benefits.  In <u>Melvin</u>, this Court recognized that the dissolution of a firm did not necessarily abate suits by or against a bankrupt company.  <u>Melvin</u>, 476 F.3d at 419, citing <u>Canadian Ace Brewing Co. v. Joseph Schlitz Brewing Co.</u>, 629 F.2d 1183, 1185-56 (7th Cir. 1980), and <u>BondPro Corp. v. Siemens Power Generation, Inc.</u>, 463 F.3d 702, 705 (7th Cir. 2006).  The Court also recognized that when the Bankruptcy Court approved the dissolution of Horizon Natural Resources, it ordered that pending claims were to proceed to final adjudication with the applicable debtor as a party.  Claims that were finally awarded would not be enforced against the debtor, however.  Rather, the Department of Labor could sue to collect against the debtor's sureties or any other insurer or guarantor in a later enforcement action.  This Court found the Bankruptcy's Court's order was confusing because the bankruptcy court had liquidated the debtor and had not designated any successor.  Although the Court recognized that a surety or insurance company that would be potentially prejudiced by an

award could have participated as a party in the administrative proceedings or before this Court, in Melvin's case, no surety or other potentially responsible party had sought to intervene in the proceedings.  The Court therefore held that the dissolved employer could not appeal from an adverse decision because it had nothing to lose or gain.  Id. at 420.  If intervention was precluded, then the surety would seek to relitigate the underlying black lung claim in federal district court in an attempt to defend a claim under the bond which can only be brought in federal district court.  28 U.S.C. § 1352.  The DOL surety bond form embodies this requirement as well.    A party cannot be held liable without having been afforded a right to defend itself.

While intervention was not allowed in Melvin, the Court's decision did not preclude intervention in all cases.  The Court made this clear when it was asked to consider the issue a second time in Griskell, a decision ignored by Mrs. Crowe.  There, Zeigler had appealed from an award of black lung benefits to the Benefits Review Board.  While the case was pending before the Board, Zeigler was dissolved in bankruptcy.  The Director later identified a surety that issued a bond that might have covered the claim and the surety filed a limited appearance of counsel, but did not seek to intervene.  After the Board decided the case, Zeigler requested reconsideration by the Board and after the Board declined to reconsider, Zeigler filed a petition for review by this Court.  After briefing before this Court was completed, in the aftermath of Melvin, Zeigler's surety filed a motion to intervene in the proceedings.  This Court recognized that the surety clearly had a potential financial interest in the outcome of the case and granted that motion.  Griskell, 490 F.3d at 610 n.1.

In this case, the company that DOL identified as a potential surety intervened at the Benefits Review Board after the Court's decision in Melvin.  The case is more like Griskell than Melvin.  First, unlike Melvin, when Zeigler

14

petitioned for modification in Crowe's case, it had not been dissolved in the bankruptcy proceeding.  Thus, this is not a case in which a company that did not exist sought review of a decision that did not affect it.  But, like Griskell, the surety identified by DOL sought to intervene when this Court's decision in Melvin suggested that such intervention was advisable.  And, here, the Benefits Review Board granted Travelers' motion to intervene, giving Travelers the ability to pursue -- and now defend -- Zeigler's request for modification.  Any issue as to whether there was a party in interest was eliminated.  Finally, Crowe offers no legal basis for challenging the Board's decision to allow intervention.  Crowe's point seems to be that if he had no adversary, he would have won his case.  While that may be true, it does not entitle Mrs. Crowe to litigate without opposition from the party expected to pay benefits if any are due.

Mrs. Crowe devotes considerable effort to her belief that Melvin applies here but ignores the Court's decision in Griskell, ignores that when Zeigler requested modification it had not been dissolved in bankruptcy, and ignores that Travelers intervened in the proceedings before the Board after Melvin was decided and because this Court required intervention in these cases.  Although Mrs. Crowe acknowledges, as she must, that entities whose rights with respect to benefits may be prejudiced by a decision may participate as parties, she ignores that Travelers was granted such leave to participate.  Whatever Zeigler's status, Travelers appeared in support of the judge's decision, rendering Crowe's argument about the neutrality of the ALJ or the Board and the allocation of burdens of proof irrelevant.

In any event, contrary to Mrs. Crowe's suggestion, neither the ALJ nor the Board initiated any modification proceedings in this case; Zeigler initiated those proceedings.  And, contrary to Crowe's suggestion that Travelers waited too long to intervene, Travelers filed for leave to intervene as soon as it became

clear, based on Melvin, that this Court would not honor the bankruptcy court's directive that pending cases must proceed with the debtor as the employer.

Finally, Crowe's suggestion that the Board somehow erred in granting Travelers' motion to intervene is neither well taken nor well supported. First, the decision to find intervention is timely is not reviewed under an arbitrary and capricious standard. It is a discretionary determination. NAACP v. New York, 413 U.S. 345, 366 (1973) ("Timeliness is to be determined from all the circumstances. And it is to be determined by the court in the exercise of its sound discretion; unless that discretion is abused, the court's ruling will not be disturbed on review."). Granting or withholding intervention is not to be used as a tool to punish litigants, but rather to protect the rights of existing parties. See Sierra Club v. Espy, 18 F.3d 1202, 1205 (5th Cir. 1994) (permitting a trade association to intervene even though an action had been pending for eight years because it acted promptly after becoming aware that its interests were affected). There is no time limit on when a party may seek intervention in an agency appeal. In fact, in Griskell, this Court permitted such intervention after an appeal has been filed and briefed. See also Reich v. ABC/York-Estes Corp., 64 F.3d 316, 321 (7th Cir. 1995) (reversing district court's denial of intervention).

The Board did not err in affirming the ALJ's decision that Travelers' intervention was timely here. Prior to Melvin, Travelers had no reason to intervene. The Bankruptcy Court had ordered cases to proceed with the debtor as the party and the Supreme Court had held that a bankruptcy court's order is not subject to collateral attack. See Celotex Corp. v. Edwards, 514 U.S. 300, 313 (1995). See also Gruntz v. County of Los Angeles, 202 F.3d 1074 (9th Cir. 2000). Other courts cannot intrude "upon the plenary power of the federal courts in administering bankruptcy cases" by modifying or dissolving bankruptcy orders.

McGhan v. Rutz, 288 F.3d 1172, 1179 (9th Cir. 2002). As stated by the Supreme Court, "'[i]t is for the [bankruptcy court] to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected.'" Celotex Corp., 514 U.S. at 313 (quoting Walker v. Birmingham, 388 U.S. 307, 314 (1967)). Until Melvin (and since Melvin), this Court's decisions accorded with those principles. See In Re Airadigm Commc'ns, 547 F.3d 763, 770 (7th Cir. 2008) ("a plan cannot be modified for any reason after substantial consummation"). Prior to Melvin, the Seventh Circuit permitted parties to proceed in claims against debtors even though the debtor had been discharged in bankruptcy in order to perfect a claim against an insurer, and the insurer was not required to intervene. See Hawxhurst v. Pettibone Corp., 40 F.3d 175, 180 (7th Cir. 1994) ("Permitting a suit to obtain a declaration of liability against a debtor is not equivalent to authorizing the recovery of a barred claim in a bankruptcy proceeding. … The real economic interests affected by Hawxhurst's present action are those of [the debtor's] insurers; a declaration of liability obtained against [the debtor] merely operates as "a prerequisite to recovery against another entity."); In Re Shondel, 950 F.2d 1301 (7th Cir. 1991) ("a discharge injunction … does not preclude the determination of a debtor's liability for the purpose of recovery from an insurer.").[5] There was nothing remarkable about the bankruptcy court's order in the Horizon bankruptcy that pending claims proceed against the debtor as a pre-requisite to recovery against another entity. Nor was there any abuse of discretion in allowing Travelers to intervene after this Court held that the debtor, as a "ghost," could not exercise the rights of a party in defending a claim.

---

[5]     Although not relevant to the disposition of this appeal, Melvin is not easily reconciled with Hawxhurst and Shondel, which allow a claimant to proceed nominally against a debtor in bankruptcy after the bankruptcy closed in order to seek recovery from an insurer.

B.    THE ALJ DID NOT ABUSE HIS DISCRETION IN HOLDING THAT MODIFICATION OF CROWE'S CLAIM SATISFIED THE "JUSTICE UNDER THE ACT" STANDARD

Crowe next complains that the ALJ's finding that modification rendered justice under the Act was somehow arbitrary and capricious because the judge either ignored Zeigler's lack of diligence or ignored Zeigler's failure to pay benefits when the claim initially was awarded.  These arguments are undermined by both the judge's decision in this case and this Court's decision in Old Ben Coal Co. v. Director, OWCP [Hilliard], 292 F.3d 533 (7th Cir. 2002).

First, Crowe's dissatisfaction with the ALJ's most recent determination stems from the mistaken belief that having obtained an award of benefits at one point in this litigation, he was somehow entitled to an award at the later stages.  There is no support for that belief.  The Fourth Circuit rejected it explicitly when a claimant (Lane) raised a similar argument:

> Finally, Lane argues that because the ALJ originally awarded benefits in 1988 and on remand in 1991, extraordinary justification is required for the ALJ's denial of benefits on the second remand.  He contends that the ALJ erred on the second remand when he reversed, without explanation, the prior ALJ's findings.

> Lane's argument lacks merit.  The BRB held that the prior ALJ decision contained errors.  The BRB vacated the prior ALJ's finding and instructed the ALJ to reconsider the relevant evidence, with no instructions or assurances that the ALJ was to reach the same result.  When the BRB enters such a remand order, the ALJ may fully consider whether the claimant satisfied his or her burden of proving the element at issue.  Lane concedes that the BRB's decision returned the parties to the status quo ante the prior ALJ's decision, but he nonetheless argues, without citation to authority, that the ALJ had to explain his reasons for a contrary finding on the second remand.  Lane's theory, that the two prior awards of benefits entitle him to a presumption of benefits, is untenable.  The ALJ did not err when he reconsidered the weight of the relevant evidence, pursuant to the BRB's order, on the second remand.

Lane v. Union Carbide Corp., 105 F.3d 166, 174 (4th Cir. 1997).  Crowe's identical argument fails for the same reasons.

The argument also stems from the mistaken belief that the ALJ somehow ignored the proceedings in the prior litigation.  Brief for the Petitioner at 31-33.  The judge's opinion recounts the prior proceedings in detail.  App. 10-App. 12.  His analysis reflects that he considered the relevant factors in determining whether entertaining the request for modification rendered justice under the Act.  As this Court instructed in Hilliard,

> The ALJ is in a unique position to assess the motivations of the party, the merits of the motion as well as institutional concerns. We do not think it wise or consonant with the grant of discretion in the statute, therefore, to unnecessarily cabin the ALJ's ability to address the complexities of a motion to reopen....
>
> In making that determination, the ALJ will no doubt need to take into consideration many factors including the diligence of the parties, the number of times that the party has sought reopening, and the quality of the new evidence which the party wishes to submit. These and other factors deemed relevant by the ALJ in a particular case ought to be weighed ... under the frequently articulated "justice under the Act" standard,  O'Keeffe, 404 U.S. at 255.... The latter formulation cabins the discretion of the ALJ to keep in mind the basic determination of Congress that accuracy of determination is to be given great weight in all determinations under the Act.

Hilliard, 292 F.3d at 547.

The judge considered these factors.  He assessed the diligence of both parties.  App. 12.  He acknowledged that although Zeigler did not develop proof initially, Zeigler acted diligently in attempting to develop proof when there was cause to do so, but the judge denied those efforts.  App. 12-App. 13.  Moreover, he found that Zeigler diligently pursued modification.  App. 13.  He concluded that if any party was not diligent in pursuing its claim, it was the claimant, not Zeigler.  The judge pointed out that Crowe undertook no effort to respond to the proof that Zeigler developed on modification.[6]  App 13.  The judge also

---

[6]     Crowe was represented by counsel at that point in time.  It should have come as no surprise that a judge might find that the uncontradicted opinions

assessed the number of times Zeigler sought reopening and found that this factor "weighed strongly" in favor of the employer. App. 14. He considered the quality of the new evidence. That too weighed in favor of modification. The judge found that the new evidence was substantial, it was from highly qualified pulmonary specialists, and it was persuasive. App. 14. The judge also considered the fact that the claimant did not respond to that new proof. App. 13, App. 14. At claimant's behest, the judge also considered Zeigler's failure to pay benefits to the claimant while it pursued modification. He concluded that Crowe was not harmed by Zeigler's conduct. He received any benefits that were due from the Department of Labor's Black Lung Disability Trust Fund. Id. No claimant has a right to insist that he be paid by the employer rather than the Trust Fund prior to final adjudication. Finally, the judge considered the statutory preference for accuracy of benefits and concluded that "employer's newly developed medical evidence unquestionably demonstrates that I made mistakes of fact in finding the evidence was sufficient to prove that the miner has pneumoconiosis and is totally disabled by the disease." App. 14. The Board affirmed the ALJ's decision, finding the judge both considered the

---

from three pulmonary disease specialists demonstrated a mistake of fact. The judge remarked that the failure to respond contributed to the ALJ's decision to grant modification. See App. 13. Crowe's argument that the judge somehow treated similar "strategic decisions" by the parties differently is inaccurate. In the initial proceedings, the judge faulted Zeigler for not timely submitting proof that responded to Crowe's evidence. Zeigler made that determination based on this Court's decision in McNew which precluded an award in his second claim as a matter of law. When this Court ruled that the unique facts of this case constituted an exception to McNew, the ALJ rebuffed Zeigler's efforts to develop proof. In contrast, on modification, the judge faulted Crowe for failing to develop any evidence. In the face of a statutory preference for accuracy, that strategy choice was unwise. The judge's analysis comports with this Court's decision in Hilliard acknowledging that the ALJ could consider the "diligence of the parties" The judge's observation that the new proof was uncontradicted does not shift the burden of proof from the employer to the claimant. The judge placed the burden of proof on Zeigler not on claimant.

relevant factors and explained the reasons and bases for his decision.  App. 5-App. 6.

Crowe nevertheless complains that the judge erred in his determination that Crowe was not harmed by Zeigler's failure to pay him benefits that ultimately he did not deserve.  He argues that the ALJ should have gone beyond the facts and circumstances of his individual case, to force employers to pursue appeals rather than modification if they disagree with a judge's decision.  The argument provides no reason to find an abuse of discretion in this case.  Nor does it account for the state of the law with respect to the overpayment of benefits.

First, the Department of Labor, not Crowe, represents the Black Lung Disability Trust Fund.  If Zeigler's modification petition did not succeed, Zeigler would have been required to repay the benefits that the Trust Fund paid to Mr. Crowe with interest.  If Zeigler's petition succeeded, however, as it did here, it would not have been able to recover any benefits paid to Crowe based on the mistake of fact.  See 33 U.S.C. § 922; 20 C.F.R. § 725.310.  It is the rare exception that claimants voluntarily repay interim benefits following a later determination that they are not entitled to those benefits.  See Indian Mountain Coal Co. v. Director, OWCP, No. 96-2262 (4th Cir. June 11, 1998); Bracher v. Director, OWCP, 14 F.3d 1157 (7th Cir. 1994) (where two claimants refused to repay benefits, not because they did not have the resources to do so, but on the theory that repayment was not equitably and legally just).  Crowe's reliance on an employer's failure to pay benefits where, as here, the judge determined that he was not entitled to those benefits, is no more a reason to withhold modification than is Crowe's desire to avoid repayment of benefits.  See 20 C.F.R. §§ 725.544, 725.547 (relating to the recovery of overpaid benefits to claimants).

Second, there is no support for Crowe's argument that the ALJ should consider the "effect on the Black Lung system as a whole" rather than the effect on Zeigler or the claimant. According to Crowe, he was prejudiced by Zeigler's refusal to pay interim benefits because had Zeigler paid him rather than the Trust Fund, he would have received more money that ultimately, he was not entitled to receive. Crowe believes that ALJs should force employers to pay benefits as a means of forcing employers to "behave diligently in initial proceedings." Brief for Petitioner at 37. The argument finds no support in the Black Lung Benefits Act or anywhere else. The Black Lung Benefits Act already provides a mechanism for enforcing compensation orders and attorney fee awards. 33 U.S.C. § 921(d); Peabody Coal Co. v. Director, OWCP [Ayers], 40 F.3d 906 (7th Cir. 1994). Withholding modification is not that mechanism.

Crowe next suggests that the modification remedy should be more strictly limited in its application. This argument is unsupported by any authority and is contrary to the Supreme Court's view of the provision. Modification is authorized under Section 22 of the Longshore Act, 33 U.S.C. § 922, and is applicable in Longshore, Defense Base Act and black lung claims, among others. The BLBA incorporates the provision by reference. 30 U.S.C. § 932(a). In the seventy-five years since the Longshore Act was enacted, no codified "justice under the Act" standard has been applied in Longshore or related claims to limit the remedy or restrict the preference for accuracy over finality embodied in Section 22. On rare occasions, noted by this Court in Hilliard, egregious misconduct has been cited by courts to withhold the modification remedy. See Hilliard, 292 F.3d at 543. The Supreme Court never has recognized an arbitrary limit allowing an adjudicator to withhold the remedy by judicial discretion. See e.g., Metropolitan Stevedore Co. v. Rambo, 515 U.S. 291, 300 (1995). The modification remedy was intended to be broad

and welcoming to all parties and not subject to arbitrary limitations. The "justice under the Act" standard has no genuine legal origins. It is applied only against employers and only in black lung claims to prevent them from employing the remedy. The justice under the Act language that appears in the legislative history explains a 1934 amendment to Section 22. It was not intended to be a criterion. See O'Keeffe, 404 U.S. at 255. Justice is rendered according to both the legislative text and the Supreme Court's interpretation of it when mistakes are corrected. There is no language suggesting a broad criterion prompting an inquiry into the diligence or motivation of petitioners seeking to use the remedy. More importantly, the statute controls and its language suggests no restriction or preliminary inquiry as a predicate to making modification available to all comers. Crowe's interpretation of the law to the contrary is unsupported and wrong.

### C.    THE COURT LACKS JURISDICTION TO REINSTATE THE ALJ'S PRIOR, VACATED DECISION IN THIS CASE

Crowe's remaining argument is that a prior decision by the ALJ to award benefits was the right one. He asks this Court to reinstate it. The request must be declined as a jurisdictional matter. This is not a case of first impression. Courts have held that in cases in which an ALJ has issued a decision, the Benefits Review Board has vacated it and on remand, the ALJ reverses himself, the court's jurisdiction extends only to the most recent or "final" decision by the ALJ and the Board. Bartley v. L & M Coal Co., 901 F.2d 1311, 1313 (6th Cir. 1991). The plain language of the statute compels this conclusion. 33 U.S.C. § 921(c). The Sixth Circuit explained when a claimant asks the court to consider-- and reinstate--an ALJ's decision that was vacated by the Benefits Review Board, and on remand the ALJ reverses course:

> The petitioner's contention proceeds from the erroneous assumption that we have jurisdiction to review Board action

> on an ALJ's decision that has since been reversed by the ALJ himself on remand.  Our jurisdiction is limited to review of "final" orders from the Board....  In this case, the Board order that the petitioner seeks to attack merely vacated the ALJ's initial award of benefits and remanded the claim for reconsideration in light of the appropriate legal standard.  Because "'a Board order that remands a case to an ALJ for further findings' is not reviewable" as a final order, ... we have no authority to review the ALJ's first resolution of the petitioners' claim.   Moreover, the ALJ's initial decision, having since been vacated and reversed by the ALJ himself, cannot constitute the final disposition of the claim subject to review at this juncture.

Bartley, 901 F.3d at 1313 (citations omitted).   Accord: Van Dyke v. Missouri Mining, Inc., 78 F.3d 362, 364-65 (8th Cir. 1996); Lane v. Union Carbide Corp., 105 F.3d at 174.

Crowe's argument is no different from the argument presented--and rejected--in Bartley.  In 2004, the Benefits Review Board vacated the ALJ's initial decision denying Zeigler's request for modification.   App. 42.   The Board identified specific legal errors in the ALJ's analysis, including a mechanical preference for Crowe's treating doctor and the ALJ's failure to provide the reasons and bases for the judge's decision as required by the APA.  That was the proper course for the Board to take.  On remand, the ALJ changed course.  Crowe's lawyer may disagree with the Board's interim order, but where the ALJ fails to adequately consider the proof in the record, the Board must remand rather than filling in the gaps in the ALJ's decision.  See Sahara Coal Co. v. Fitts, 39 F.3d 781 (7th Cir. 1994); Director, OWCP v. Rowe, 710 F.2d 251, 255 (6th Cir. 1983).  That is what the Board ordered in this case and Crowe accepted that determination until the ALJ declined to award benefits.  He did not challenge the propriety of the Board's decision in August 2004.  Instead, he challenged the decision only after the case returned to the ALJ, new evidence was adduced, and he lost.  Only then did Crowe argue that the original ALJ's decision was correct.  He cannot now be heard on his suggestion that the Board erred in

vacating the original ALJ's decision. This Court has no appellate jurisdiction over those non-final and abandoned decisions based upon a different record. 33 U.S.C. § 921(c), incorporated by reference into 30 U.S.C. § 932(a). An evidentiary ruling or other ruling as a matter of law, if preserved, may be so integral to a later and different decision that it might be raised on appeal following a decision on remand, but where, as here, there is a new proceeding as is the case when modification is pursued, and a new decision is based upon new evidence, the old vacated decision is gone and not subject to appellate review.

In any event, Crowe's disagreement with the Board's 2004 decision lacks merit. It presents only confusion with the various issues and the type of proof required to establish the elements of a claim. Crowe argues at length that the ALJ erred as a matter of law in crediting doctors' opinions that rested on the objective testing. According to Crowe, these doctors as well as the ALJ himself are "contrary to the Act." Crowe is mistaken on all accounts. In order to diagnose clinical or medical pneumoconiosis, objective evidence, i.e., x-rays, biopsy or autopsy evidence, is required. See 20 C.F.R. § 718.202(a)(1), (2). No one, including Crowe, disputed the absence of any evidence of medical or clinical pneumoconiosis here. That left proof of "legal" pneumoconiosis as the only avenue for Crowe. A diagnosis of legal pneumoconiosis requires a reasoned and documented medical opinion notwithstanding a negative x-ray. The ALJ did not err in stating that in order to be credited, a doctor's opinion must be both documented, i.e., the doctor must set forth clinical findings, observations, facts and other data, and reasoned, i.e., the doctor must explain his conclusions with reference to the underlying data. The ALJ found that Dr. Krock's opinion was not sufficient because it failed to identify the length of coal mine employment the doctor relied on and failed to address the

significance of Crowe's smoking habit.  App. 30.  That was a rational credibility choice.  See Creech v. Benefits Rev. Bd., 841 F.3d 706, 709 (6th Cir. 1988); Shelton v. Director, OWCP, 899 F.2d 690 (7th Cir. 1990).  No matter what else was in the record, the ALJ concluded that any reliance on Dr. Krock's opinion to find that Crowe had legal pneumoconiosis was based on a mistake of fact. There were no reliable, probative, substantial opinions connecting Crowe's pulmonary symptoms to his five years of coal mine employment.

In contrast, the ALJ found that the opinions of Drs. Dahhan, Repsher, Renn and Fino established the absence of any work related disease.  Their reports were well-reasoned and supported by the underlying objective evidence, including treatment notes, hospital records, and test results.  That too was a rational credibility choice and one that Crowe does not contest.

Even if Crowe had legal pneumoconiosis, the ALJ rationally concluded that he was not totally disabled by any respiratory or pulmonary impairment. The extent of a claimant's respiratory or pulmonary impairment requires separate consideration.  A finding of total disability requires a finding that the weight of the evidence, like and unlike in kind, establishes that the claimant can no longer perform the physical demands of his or her last coal mine job.  Proof of that disability may be established by valid pulmonary function studies meeting certain specified values considering the claimant's gender, age and height, valid arterial blood gas tests meeting certain table values, proof of pneumoconiosis and cor pulmonale with right-sided congestive heart failure, and reasoned and documented medical opinions.  20 C.F.R. § 718.204(b).  The ALJ found that Crowe's pulmonary function tests did not establish his disability for work.  App. 38.  Crowe does not dispute this.  The judge found that the arterial blood gas tests also did not establish Crowe's disability for work.  App. 38.  Crowe does not dispute that finding either.  There was no evidence that he

had cor pulmonale with right-sided congestive heart failure and Crowe does not dispute that conclusion. <u>Id.</u>  Finally, the ALJ concluded that Dr Krock's reservations about Crowe's ability to work in an occupation that exposed him to dust or fumes was not a finding that Crowe was totally disabled for his usual coal mine employment.  App. 38.  That conclusion is amply supported and is consistent with law.  <u>See</u> 30 U.S.C. § 902(f)(1)(A).  Every circuit court that has considered the issue, including this one, has confirmed that a recommendation against further coal dust exposure is not a finding of total disability for work under section 718.204.  <u>See</u> <u>Zimmerman v. Director, OWCP</u>, 871 F.2d 564 (6th Cir. 1989); <u>Migliorini v. Director, OWCP</u>, 898 F.2d 1292, 1296 (7th Cir. 1990).  Finally, the ALJ rationally concluded that Dr. Krock's doubt about whether Crowe could perform heavy exertional work was not sufficient to establish Crowe's total disability.  App. 39.

**VII.   CONCLUSION**

For the reasons set forth above, the decision and order of the Benefits Review Board affirming the denial of this claim should be affirmed by this Court.

Respectfully submitted,

_____
Mark E. Solomons
Laura Metcoff Klaus
GREENBERG TRAURIG LLP
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037
(202) 533-2362

## CERTIFICATION OF COUNSEL

I hereby certify that the foregoing Brief of Zeigler Coal Company and The Travelers Companies complies with the type-volume limitation specified in Rule 32(a)(7) of the Federal Rules of Appellate Procedure.  According to the word count of the word-processing system used to prepare this brief, there are 8,990 words in this brief, including footnotes.

_____
Laura Metcoff Klaus

CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2010, two copies of the foregoing Brief of Zeigler Coal Company and The Travelers Companies were served upon the following persons by first-class mail, postage prepaid and were additionally served in electronic form.

Rita Roppolo, Esquire
Office of the Solicitor
U.S. Department of Labor
Suite N-2117-FBP
200 Constitution Avenue, N.W.
Washington, D.C.  20210
roppolo.rita@dol.gov

James B. Speta, Esquire
6254 N. Glenwood Ave.
Chicago, Illinois  60611
Jim.speta@gmail.com

_____
Laura Metcoff Klaus

<u>CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 31(e)</u>

I hereby certify that pursuant to Local Rule 31(e) of the Rules of this Court, a full digital version of the Brief of Zeigler Coal Company and The Travelers Companies (from cover through conclusion) was furnished to the court electronically, by uploading a copy of the brief in PDF format) to the Court's website on November 4, 2010.

Nov. 4, 2010
Date                                    Laura Metcoff Klaus